## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

**CV 12 - 3015**

| | |
|---|---|
| JOSEPH P. ROCCO, Individually and on Behalf of All Others Similarly Situated, | ) ) ) Case No. _____ |
| Plaintiff, | ) ) **CLASS ACTION COMPLAINT** |
| v. | ) ) **SUMMONS ISSUED** |
| ADIDAS AMERICA, Inc., | ) **DEMAND FOR JURY TRIAL** |
| Defendant. | BLOCK, J. |
| | GO, M.J. |

Plaintiff Joseph P. Rocco ("Plaintiff"), on behalf of himself and all others similarly situated, hereby submits the following Class Action Complaint ("Complaint") against adidas America, Inc. ("Defendant"), and upon personal knowledge as to his own acts and status, and upon information and belief, the investigation of his counsel, and the facts that are a matter of public record, as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff files this class action on behalf of himself and all others similarly situated to obtain restitution and injunctive relief from Defendant for the following Class: All those who have purchased adiPURE Trainer footwear marketed and distributed by Defendant adidas America, Inc.

2.      In recent years, "barefoot running" has increased in popularity. Defendant manufactures, markets, distributes and sells shoes called adiPURE that are designed to capitalize on this fitness craze. adiPURE is a "minimalist" shoe intended to replicate barefoot running.

1

3.      Defendant has claimed that its adiPURE Trainer provides several benefits over conventional fitness shoes.  Defendant charges around $90 per pair, and sells the shoes at retail shoe stores such as Footlocker and Dick's Sporting Goods.  However, Defendant's footwear has not been proven to provide any of the additional health benefits included in their marketing.

4.      Based upon information and belief, Defendant has not conducted any comprehensive medical or scientific studies to examine the health benefits claims it makes regarding adiPURE.  In addition, the reduced padding that comprises the "minimalist" shoes decreases protection for the foot and increases the risk of bruising and damage to the foot when conducting impact activities as part of training.

5.      Actual scientific organizations such as the American Podiatric Medical Association ("APMA") have investigated the claims about barefoot running and the benefits of minimalist shoes, and have not found the health claims scientifically supported:

> While anecdotal evidence and testimonials proliferate on the Internet and in the media about the possible health benefits of barefoot running, *research has not yet adequately shed light on the immediate and long term effects of this practice.*
>
> Barefoot running has been touted as improving strength and balance, while promoting a more natural running style.  However, risks of barefoot running include a lack of protection—which may lead to injuries such as puncture wounds—and increased stress on the lower extremities.[1]

---

[1] APMA Position Statement on Barefoot Funning, http://www.apma.org/MainMenu/News/MediaRoom/PositionStatements/Barefoot-Running.aspx (emphasis added) (last visited Mar. 9, 2012).

1577688.1 1

6. In addition, Defendant failed to alert adiPURE purchasers that may run in their adiPURE trainers that they will have to alter their running style, or the health risks they face when changing their running style.

7. Plaintiff purchased the adiPURE Trainer believing the benefits noted in adidas' marketing information he saw online and the information about the shoes that were provided by Defendant to the Dick's Sporting Goods store where he purchased his adiPURE Trainers. He was *not* informed by Defendant that he could face increased risks of foot injuries by using the footwear.

8. After only a few months of use, Plaintiff experienced foot pain. A medical examination yielded compound fractures in his foot. While Plaintiff does not seek compensation for his personal injuries, he seeks a refund for his adiPURE Trainer footwear he will no longer use, and injunctive relief requiring adidas to warn future customers of the risks.

9. As a result of Defendant's deceptive claims, consumers—including Plaintiff and other members of the proposed Class—have purchased a product that has not been proven to perform as advertised and that actually inflicts injuries upon its user.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of Plaintiff and members of the Class, which exceeds one hundred persons, exceed the sum or value of $5,000,000, and there is diversity of citizenship between at least one member of the proposed Class and Defendant.

3

11.     Venue is proper in this District under 28 U.S.C. § 1391(a)(1) and (2). Defendant conducts substantial business throughout New York, and Plaintiff resides in this District.

## PARTIES

12.     Plaintiff is a resident of the state of New York.  Plaintiff purchased his adiPURE footwear in Scranton, Pennsylvania in February of 2012.

13.     Defendant adidas America, Inc. is a Delaware corporation whose principal place of business and headquarters is at Adidas Village, 5055 North Greeley Avenue, Portland, Oregon.  adidas America, Inc. is the American subsidiary of adidas AG, a sports apparel manufacturer and joint stock company organized and existing under the laws of the Federal Republic of Germany.  adidas America, Inc. manufacturers, markets, sells, and distributes adiPURE minimalist footwear to American consumers through authorized retailers and through its website throughout the United States, including Pennsylvania and New York.

14.     Plaintiff believes, and thus alleges, that at all times herein, Defendant's agents, employees, representatives and/or partners were acting within the course and scope of such agency, employment, and representation on behalf of Defendant.

## SUBSTANTIVE ALLEGATIONS

### Defendant's Marketing of a Barefoot Trainer

15.     "Barefoot" shoes have increased in popularity in recent years.  These are shoes with articulated toes and reduced padding and materials.  Intending to capitalize on

4

the rising popularity of Vibram's FiveFingers footwear, Defendant launched adiPURE in or about August of 2011.[2]  adidas made the following representations:

a.      "Promoting pure and natural movement by harnessing the body's natural mechanics, the adipure Trainer activates and strengthens muscles, builds balance and promotes dexterity."

b.      "Using your foot's natural power and movement will help you strengthen muscles you never knew you had in your feet, lower legs and throughout your core."

c.      "The barefoot-shaped construction of the adipure Trainer mimics the foot's anatomy creating a natural-feeling shoe that still protects the skin and provides traction and durability."[3]

16.     A fact sheet created by adidas provides the following information:



## Product Information

Go barefoot without being barefoot while wearing the adidas® Men's adiPURE® training shoe. Restriction free movements from your heel to your toes increase muscle

---

[2] See press release at http://preview.thenewsmarket.com/Previews/ADID/DocumentAssets/212344.pdf, last accessed May 28, 2012.
[3] *Id.*

1577688.1 1

activation delivering a positive impact on your workouts.
The second skin upper has a flexible sock like fit while the
OrthoLite sockliner provides cushion and anti-odor
protection. Increase your strength, agility, and balance with
this barefoot shoe from adidas®.[4]

17.     Among the "FEATURES" noted for the shoe, were: "Restriction free
movement from your heel to your toes for natural movement," and "Increases muscle
activation and higher training efficiency."

18.     A marketing video for adiPURE has an adidas employee named David
Baxter, who claims that the shoe was designed for "athletes," and that adidas' goal was to
make the shoe "fit the foot …." In another segment, another adidas employee, Mark
Vestergen states, "the goal was to enhance the foot's engineering" to "enhance
performance potential …[but] also we need to have some protection from training.
Right, impacts to the ground, the force, the boxes. So we don't get any foot bruising,
shutting athletes down. So we created the most flexible but also protective environment
for athletes to train more naturally in the AdiPURE."[5]

19.     adidas began to roll out its minimalist shoe in late 2011. adidas' 2012 first
quarter report does not provide any financial information exclusive to the adiPURE
Trainer shoes, but it does report that "footwear sales increased 12%," and that "New

---

[4]  See http://www.dickssportinggoods.com/product/index.jsp?productId=11981972#pr-header-11981972, last accessed May 28, 2012.

[5] See http://birthdayshoes.com/adidas-toe-shoes-adipure-barefoot-shoes, last accessed on May 28, 2012.

1577688.1 1

product introductions contributed to the sales growth in all product categories."[6] The adiPURE Trainers are listed as one of adidas' major product launches in Q1 2012.

**The Unproven Benefits of Minimalist Shoes**

20.     adidas' marketing of adiPURE follows the increased proliferation of barefoot running, which proponents claim provides many of the same benefits that adidas makes – namely increased strength and decreased injuries.[7] Minimalist shoes seek to piggyback on these claims.

21.     Presently, no publicly available sound scientific study has shown that barefoot training leads to health benefits distinct from what conventional athletic shoes provide.[8] No studies or even surveys have sustained the health benefits of barefoot training.[9] Instead, "Evidence is conflicting on the actual strengthening potential of the barefoot condition, and even if the barefoot condition led to increased muscular strength, the claim that his results in reduced injuries or improved performance has not been proved scientifically."[10]

22.     Indeed, a recent settlement of toning shoes cases by the Federal Trade Commission, several State's Attorneys General, and plaintiffs' lawyers shows rampant baseless assertions of health benefits without scientific support. In that case, Skechers USA, Inc., agreed to pay $40 million to settle charges that the company deceived

---

[6]See http://quote.morningstar.com/stock-filing/Quarterly-Report/2012/3/31/t.aspx?t=PINX:ADDYY&ft=&d=2c7dfdff9a77653255bbc6ff51295901, last accessed on May 31, 2012.
[7] See, e.g., American Podiatric Medical Association's position statement on Barefoot Running, http://www.apma.org/MainMenu/News/MediaRoom/PositionStatements/Barefoot-Running.aspx, lasst accessed, May 31, 2012. See also, Jenkins, et al.,, Barefoot Running Claims and Controversies: a review of the literature," J Am Podiatr Med Assoc. 2011 May-Jun;101(3):231-46 at 235.
[8] Jenkins, et al., at 235.
[9] Id. at 240 (citations omitted).
[10] Id. at 240. See also Benno Nigg, Biomechanical Considerations on Barefoot Movement and Barefoot Shoe Concepts, Footwear Science, June 2009, at 76 ("Nigg Article").

7

consumers by making unfounded claims that its toning shoes, "Shape-ups" would help people lose weight, and strengthen and tone their buttocks, legs and abdominal muscles.[11] Similarly, Reebok International, Ltd., a member of the adidas Group, settled with the FTC in September of 2011 for its own unsupported health claims regarding its "EasyTone" toning shoes. Reebok had claimed that the shoes would provide extra tone and strength to leg and buttock muscles.[12]

23.    adidas' cites no studies showing that its adiPURE footwear provides the health benefits contained in its marketing materials. On information and belief, no scientifically sound studies exist to support those health claims.

**The Risks of Minimalist Shoes**

24.    Because training in adiPURE footwear requires a running style that is different from traditional athletic shoes, the purchaser must change the way he runs when running in adiPURE. However, as indicated in a recent study, changing one's running form to use minimalist shoes can be an extremely long and complicated process.[13] Most athletes have "been 'programmed' to run in the conventional heel-strike manner."[14] Dr. Cedric Bryant, the chief science officer for the American Council on Exercise, stated: "[t]he key thing our study seems to suggest is that it's really important you take some time to really adjust your running form or running style."[15]

25.    Vibram, adidas's main competitor in the minimalist shoe market, acknowledges the difficulty in transitioning to running in its minimalist shoes. On the

---

[11] See http://www.ftc.gov/opa/2012/05/consumerrefund.shtm, last accessed on June 4, 2012.
[12] See http://www.ftc.gov/opa/2011/09/reebok.shtm, last accessed on June 4, 2012.
[13] See McCarthy, et al., *Like Barefoot, Only Better?* Ace CertifiedNews (Sept. 9, 2011), available at http://www.acefitness.org/certifiednewsarticle/1641/, last accessed May 31, 2012.
[14] See id.
[15] Tara Parker-Pope, *Are Barefoot Shoes Really Better?*, N.Y. Times, Sept. 30, 2011, *available at http://well.blogs.nytimes.com/2011/09/30/are-barefoot-shoes-really-better/ (last visited Mar. 9, 2012).*

1577688.1 1

hang tag of each Vibram FiveFinger shoe, Vibram states: "If you are running in FiveFingers for the first time, we encourage a very gradual transition to ensure a safe and pleasurable experience.  Please visit our website for resources related to natural running and training."  The Vibram website features, among other things, a twenty-page step-by-step guide that purports to provide advice as to how to train in FiveFingers.[16]  Nike Free – another shoe that falls under the minimalist category – includes in the shoe box at purchase an instruction pamphlet explaining how to adapt to the footwear, and advocates using the shoes for a 20-30 minute workout on a natural surface once weekly.[17]  adidas provides no such warnings or instructions.

26.   Moreover, on its website, Vibram admits that it could take more than a year before one is able to transition to run in FiveFingers:

> **How long will it take to transition to Vibram FiveFingers®?**
> For some, it is a matter of weeks, for others months, and **for a few it could be a year or more**.  Much is dependent on your foot type, the activities you're using Vibram FiveFingers for, and the amount of pronation you experience.  The progression will ultimately be worth the wait, and your foot and body will be stronger and better off for it.  The answer lies in your inherent foot and body biomechanics and the condition of your muscles.  Just remember, improving the skill of those muscles then practicing and using those muscles in Vibram FiveFingers will increase both endurance and strength.  This will have profound beneficial effects on your body and wellbeing. Listen to your body.[18]

---

[16] Vibram, *Running in Vibram Five-Fingers®:  A Step-By-Step Guide*, http://s3.amazonaws.com/VibramFiveFingers/Barefoot_Running_Brochure_R13_062211.pdf (last visited Mar. 9, 2012).

[17] *See* http://www.aapsm.org/runshoe-minimalist.html last accessed on May 31, 2012.

[18] Vibram, http://www.vibramfivefingers.com/faq/biomechanics.htm (emphasis added) (last visited Mar. 9, 2012).

1577688.1 1

27. Again, adidas does not provide any such warnings to its prospective purchasers, or its recent purchasers who may be feeling discomfort after using the adiPURE footwear.

28. In truth, transitioning to train in minimalist footwear can lead to pain and injuries. According to the ACE Study, runners wearing minimalistic footwear "who fail to change over to a more forefoot stride while wearing Vibrams may open themselves up to discomfort and possible injury."[19] One podiatrist, who specializes in sports medicine and is a marathon runner, said that 85% of her patients get injured trying to transition to minimalist shoes.[20]

29. Defendant also does not warn consumers that some may never make the transition in their gait needed for the switch to minimalist footwear. The researchers in the ACE Study "found that half of the women who switched to barefoot running or minimalist sports shoes failed to adjust their form."[21] These runners had "more wear and tear on their bodies, not less." John P. Porcari, professor of exercise and sports science and one of the authors of the ACE Study, stated that "[p]eople who run, they've run in shoes for so long, landing on their heels, that some of them are going to continue to do that....When you land on your feet, the force gets transmitted up the kinetic chain—to feet, to ankles, to knees, to hips, to back. That's why runners can have injuries from their toenails to their belly button."[22]

---

[19] McCarthy, et al., *supra* note 11.
[20] Andrew Adam Newman, *Appealing to Runners, Even the Barefoot Brigade*, N.Y. Times, Jul. 27, 2011, at B3, *available athttp://www.nytimes.com/2011/07/28/business/media/appealing-to-runners-even-the-shoeless.html?_r=2*, last accessed May 31, 2012.
[21] Parker-Pope, *supra* note 10, *Are Barefoot Shoes Really Better?*
[22] *Id. See also* McCarthy, et al., *supra* note 11.

10

30.     Defendant has reaped profits by leading consumers to believe that there is reliable scientific data backing up their claims that adiPURE can strengthen muscles and reduce the risk of injury. Consumers intending to use adiPURE would not have paid the amounts charged for adiPURE or would not have purchased adiPURE at all had they known that there is no scientific evidence supporting Defendant's major health benefit claims, and that they were more likely to suffer foot injuries when training in adiPURE due to the decreased protection the shoes provide the foot than conventional athletic shoes.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following Class:

> All persons in the United States who purchased adiPURE footwear during the period from August 2011 until notice is disseminated to the Class.

Excluded from the Class are Defendant and its officers, directors, and employees, those who purchased adiPURE for the purpose of resale, and those persons pursuing claims for personal injuries.

32.     In the alternative, Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following class:

> All persons who purchased adiPURE footwear in the State of Pennsylvania during the period from Aug. 2011 until notice is disseminated to the Class.

Excluded from the Pennsylvania Class is Defendant and its officers, directors, employees, those who purchased adiPure for the purpose of resale, and those persons pursuing claims for personal injuries.

11

33.     **Numerosity.** The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff is informed and believes, and on that basis alleges, that the Class contains thousands of members. The precise number of Class members is unknown to Plaintiff.

34.     **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Defendant had adequate substantiation for its claims prior to making them;

(b)     Whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(c)     Whether Defendant's alleged conduct violates public policy;

(d)     Whether the alleged conduct constitutes violations of the laws asserted herein;

(e)     Whether Defendant engaged in unfair and/or deceptive advertising with respect to adiPURE;

(f)     Whether Defendant has been unjustly enriched;

(g)     Whether Plaintiff and members of the Class have been injured by Defendant's conduct; and

(h)     Whether Plaintiff and the Class are entitled to relief and the amount and nature of such relief.

35.     **Typicality.**  The claims of Plaintiff are typical of the claims of the members of the Class because, among other things, Plaintiff asserts the same claims, and all Class members were injured through the uniform misconduct described above.

36.     **Adequacy of representation.**  Plaintiff will fairly and adequately protect the interests of the Class and has retained attorneys experienced in class and complex litigation.  Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

37.     **Superiority.**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for the following reasons:

(a) .     It is economically impractical for members of the Class to prosecute individual actions;

(b)     The Class is readily definable; and

(c)     Prosecution as a class action will eliminate the possibility of repetitious litigation.

38.     A class action will cause an orderly and expeditious administration of the claims of the Class.  Economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

39.     Plaintiff does not anticipate any undue difficulty in the management of this litigation.

40.     Plaintiff and the Class expressly exclude any causes of action relating to personal injury or other bodily harm arising from Defendant's conduct.

## FIRST CAUSE OF ACTION

### (Violation of the Oregon Unlawful Trade Practices Act – National Class)

13

41.   Plaintiff incorporates by reference and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

42.   O.R.S. §§646.605 to 646.652 proscribe unfair and unlawful trade practices.

43.   Under O.R.S. §646.608, it is an unlawful practice to represent that goods have characteristics, benefits or qualities that they do not have. It is also an unlawful practice for the seller to fail to disclose any known material defect or material nonconformity. §646.608(t).

44.   Plaintiff purchased adiPURE footwear for personal, family or household purposes and suffered an ascertainable loss, namely by purchasing footwear that he cannot use, and that does not provide the health benefits Defendant claims.

45.   Plaintiff was exposed to Defendant's marketing materials on Defendant's website, the internet, and the store where he purchased his footwear. In reliance on the misleading health benefit claims about adiPURE, Plaintiff purchased a pair of adiPURE Trainer footwear in February of 2012 for which he paid approximately $90. Had Plaintiff known the truth about Defendant's representations, he would not have purchased Defendant's footwear.

46.   Defendant's actions as alleged herein violate the Oregon Unlawful Trade Practices Act including, inter alia: Defendant intended, or consciously disregarded, that Plaintiffs and absent Class members would rely on its omissions, misrepresentations, and practices so that customers would purchase their footwear believing it would provide greater health benefits and/or decrease risks of injury.

14

47.     Defendant's practices offend public policy, are immoral, unethical and oppressive, and cause substantial injury to the consumer.

48.     Defendant's practices are not outweighed by countervailing benefits to consumers, and could not be reasonably avoided by the consumer. Information about the risk of Defendant's minimalist footwear was not posted nor provided to consumers either directly by Defendant or at the point of purchase.

49.     Defendant directed its misleading marketing campaign that touted unsupported health benefits of adiPURE footwear, while not disclosing material information about the risks of using the shoes from its headquarters in Oregon. Third-party retailers throughout the United States used fact sheets, hang tags and other marketing materials created by Defendant.

50.     Plaintiff and those similarly situated seek reimbursement for their purchase price of Defendant's adiPURE footwear, $200 per violation, injunctive relief, and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### (Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law – Pennsylvania Only Class)

51.     Plaintiff incorporates by reference and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

52.     Penn. Stat. Title 73 § 201-2(4) proscribes unfair methods of competition and unfair or deceptive acts or practices including engaging in any fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

15

53.    Plaintiff purchased adiPURE footwear for personal, family or household purposes and suffered an ascertainable loss, namely by purchasing footwear that he cannot use, and that does not provide the health benefits Defendant claims.

54.    Plaintiff was exposed to Defendant's marketing materials on Defendant's website, the internet, and the store where he purchased his footwear. In reliance on the misleading health benefit claims about adiPURE, Plaintiff purchased a pair of adiPURE Trainer footwear in February of 2012 for which he paid approximately $90. Had Plaintiff known the truth about Defendant's representations, he would not have purchased Defendant's footwear.

55.    Defendant's actions as alleged herein violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law including, inter alia: Defendant intended, or consciously disregarded, that Plaintiffs and absent Class members would rely on its omissions, misrepresentations, and practices so that customers would purchase their footwear believing it would provide greater health benefits and/or decrease risks of injury.

56.    Defendant's practices offend public policy, are immoral, unethical and oppressive, and cause substantial injury to the consumer.

57.    Defendant's practices are not outweighed by countervailing benefits to consumers, and could not be reasonably avoided by the consumer. Information about the risk of Defendant's minimalist footwear was not posted nor provided to consumers either directly by Defendant or at the point of purchase.

58.    Plaintiff purchased his adiPURE footwear in Scranton, Pennsylvania, where he was exposed to Defendant's misleading marketing materials regarding the

16

health benefits supposedly offered by adiPURE footwear, and which did not disclose the safety risks when switching to minimalist footwear.

59.     Plaintiff and those similarly situated seek reimbursement for their purchase price of Defendant's adiPURE footwear, injunctive relief and reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment – under both Pennsylvania and Oregon Law)

60.     Plaintiff incorporates by reference and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

61.     As a direct and proximate result of Defendant's unlawful acts and practices, Defendant has wrongfully retained a benefit from Plaintiff and similarly situated purchasers of adiPURE footwear.

62.     Defendant's continued retention of these benefits would be unjust.

63.     Plaintiff and those similarly situated seek disgorgement of their purchase price of Defendant's adiPURE footwear from Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for judgment against Defendant as follows:

A.      An order certifying this class as a class action and appointing Plaintiff and his counsel to represent either a National Class, or a Class of Pennsylvania purchasers;

B.      Individual restitution to Plaintiff and each member of the Class;

17

C.  An order requiring Defendant to immediately cease its wrongful conduct as set forth above;

D.  For reasonable attorneys' fees and the costs of this action;

E.  For statutory pre-judgment interest; and

F.  For such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

Dated: June 14, 2012

COHEN MILSTEIN SELLERS & TOLL, PLLC

Douglas J. McNamara, Esq (E.D.N.Y. 2766830)

1100 New York Avenue, N.W., Suite 500W
Washington, D.C. 20005
202-408-4600
202-408-4699 (fax)
dmcnamara@cohenmilstein.com

Andrew N. Friedman
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue, N.W., Suite 500W
Washington, D.C. 20005
202-408-4600
202-408-4699 (fax)

J. Douglas Richards
COHEN MILSTEIN SELLERS & TOLL, PLLC
88 Pine Street
14th Floor
New York, NY 10005
212 838 7797
212 838 7745

*Counsel for Plaintiff Joseph P. Rocco*

18

1577688.1 1